UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEYOSHA L.,[1] | ) |
|               Plaintiff, | ) No. 19 CV 1843 |
| v. | ) Magistrate Judge Young B. Kim |
| ANDREW M. SAUL, Commissioner of Social Security, | ) |
|               Defendant. | ) August 24, 2020 |

**MEMORANDUM OPINION and ORDER**

Keyosha L. ("Keyosha") seeks continuation of supplemental security income ("SSI") disability benefits, which the Social Security Administration determined she was no longer eligible to receive as of May 2015. Keyosha claims that she is disabled by a learning disorder, major depressive disorder with psychotic features, delusional disorder, and borderline intellectual functioning. Before the court are the parties' cross motions for summary judgment. For the following reasons, Keyosha's motion is granted, the government's motion is denied, and the matter is remanded:

**Procedural History**

Keyosha received SSI as a child based on a disabling learning disorder. (Administrative Record ("A.R.") 25.) When reassessing whether Keyosha qualified for SSI benefits as an adult, the Commissioner found that she was no longer disabled as of May 30, 2015. (Id. at 25, 128-29, 144-46.) After her benefits ceased, (id. at 25,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

161-69), Keyosha requested and was granted a hearing before an administrative law judge ("ALJ"), (id. at 25, 188-91, 206-10). She appeared for the hearing in February 2017 along with her mother and grandmother and a vocational expert ("VE"). (Id. at 25, 62-115.) Keyosha was not represented by counsel. (Id.) The ALJ issued a decision in February 2018 finding that Keyosha is not disabled. (Id. at 25-40.)

Keyosha asked the Appeals Council to review the ALJ's decision and submitted new records showing that in January 2018 she was hospitalized for suicidal ideation and diagnosed with major depressive disorder with psychotic features and a learning disability. (Id. at 11-12, 21.) When the Appeals Council declined her request, (id. at 1-7), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Keyosha then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c); (R. 15).

## The ALJ's Decision

The ALJ followed the required five-step process in evaluating Keyosha's disability claim. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that Keyosha turned 18 in November 2014 and was eligible for SSI benefits as a child only through October 2014. (A.R. 27.) At step two the ALJ concluded that Keyosha has severe impairments of delusional disorder, depressive disorder, borderline intellectual functioning, and learning disorder. (Id.) At step three the ALJ determined that Keyosha's impairments do not meet or medically equal any listed impairment. (Id. at 27-32.) Before turning to step four, the ALJ assessed Keyosha as having a residual

2

functional capacity ("RFC") to perform a full range of work with the following non-exertional limitations: she can only carry out simple, routine and repetitive tasks; she can have no production rate work; and she can occasionally interact with coworkers and the public. (Id. at 32.) At step four the ALJ found that she has no past relevant work, but at step five he determined that Keyosha can perform other jobs that exist in significant numbers in the national economy. (Id. at 39-40.) Accordingly, the ALJ concluded that Keyosha is not disabled.

## Analysis

Keyosha asserts that the ALJ erred by failing to: (1) account for her mental limitations in the hypothetical question posed to the VE and in the RFC assessment; and (2) establish that a significant number of jobs would be available to her. (R. 14, Pl.'s Br. at 12-15.) This court reviews the ALJ's decision to ensure that it is supported by substantial evidence, meaning "more than a mere scintilla" but no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). To adequately support a decision, the ALJ must "build a logical bridge from the evidence to his conclusion" that the claimant is not disabled. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). The court's role is neither to reweigh the evidence nor to substitute its judgment for the ALJ's. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). That said, if the ALJ committed an error of law or "based the decision on serious factual mistakes or omissions," reversal is required. *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

3

**A. RFC Assessment**

Keyosha argues that the ALJ's hypothetical question posed to the VE and the RFC assessment failed to reflect her mental limitations. (R. 14, Pl.'s Br. at 12-14.) The issue of whether a hypothetical posed to a VE or an RFC adequately captures moderate mental limitations has become fertile ground for litigation, likely because the caselaw governing this issue is context- and case-specific. The Seventh Circuit has made clear that both the hypothetical and the RFC must account for even moderate limitations. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). While "specific" words are not required, "the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform." *Id.* (citation omitted). Furthermore, in the RFC assessment an ALJ must provide a sufficient basis to account for limitations, rather than simply relying on "catch-all terms like 'simple, repetitive tasks.'" *Id.*; *see also DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (finding that eliminating jobs with production quotas does not accommodate concentration, persistence, and pace ("CPP") limitations). Limiting a claimant to "unskilled work" says nothing about a claimant's ability to concentrate, stay on task, or maintain a given pace where CPP limitations are present. *Martin v. Saul*, 950 F.3d 369, 373-74 (7th Cir. 2020).

Here the ALJ found that Keyosha has severe impairments of delusional disorder, depressive disorder, borderline intellectual functioning, and learning disorder. (A.R. 27.) When considering the paragraph B criteria to determine the severity of these mental impairments, the ALJ found moderate limitations in

4

understanding, remembering, and applying information, (id. at 28), socially interacting with others, (id. at 29), and CPP, (id. at 30). In his hypothetical to the VE and the RFC assessment, the ALJ limited Keyosha to carrying out "simple, routine and repetitive tasks," performing no production-rate work, and having only occasional interaction with coworkers and the public. (Id. at 32.) Keyosha argues that these limitations do not adequately account for her mental impairments, and that off-task time should have been considered. (R. 14, Pl.'s Br. at 12-14.)

Keyosha points out that the ALJ recognized her mental health challenges. He found that she consistently has been diagnosed with mental health impairments, including delusional disorder, depressive disorder, borderline intellectual functioning, and a learning disorder. (A.R. 27, 34-36; see also id. at 540-41, 614-20, 649-56.) In terms of her cognitive difficulties, the ALJ noted that Keyosha achieved a full-scale IQ score of 77 during an April 2015 evaluation by psychological consultant Dr. Michael Stone, placing her intellectual functioning in the borderline range. (Id. at 28 (citing id. at 497-500).) The ALJ also cited to an April 2017 psychological consultative examination during which Keyosha achieved a full-scale IQ score of 59. (Id. (citing id. at 614-20).) Psychological consultant Dr. Robert Prescott, who performed the 2017 examination, determined that Keyosha may not have made "her best effort" given the "large discrepancy" between her 2015 and 2017 test scores. (Id. (citing id. at 618).) Thereafter, the ALJ noted that Keyosha returned to Dr. Stone in August 2017 for another evaluation and achieved a full-scale IQ score of 72. (Id. at 29 (citing id. at 652-56).) The ALJ cited psychiatric and psychological evaluations

5

dating back to 2007 and 2008 that reflect diagnoses of a mild cognitive disability. (Id. at 34.)

The ALJ also found that "longitudinal records" evidenced "a history of academic difficulties with writing, basic math skills, and reading comprehension," and a learning disability first diagnosed during a psychiatric consultative examination in December 2007. (Id. at 29, 33-34; see also id. at 408-12.) Keyosha's 2009 Individualized Education Plan noted, for example, that she "has a lot of trouble staying focused in class," "[h]er mind wanders constantly," and she "usually says she understands a concept and then her homework ends up being completely wrong." (Id. at 246.) Although Keyosha graduated from high school, she participated in special education classes since fourth grade and was homeschooled during high school with the assistance of tutors. (Id. at 29; see also id. at 103-04, 163, 243-72.)

In terms of her mental limitations, the ALJ assessed moderate deficits in three of four of the broad functional areas. In so finding, he accorded "good weight" to two state agency reviewing psychologists, who submitted the only medical opinions of record. (Id. at 36-37.) In May 2015 reviewing psychologist Tyrone Hollerauer determined that Keyosha has a moderate CPP limitation, which limits her to two- to three-step tasks, along with mild limitations in activities of daily living and social functioning. (Id. at 37 (citing id. at 503-20 (noting moderate difficulties in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, accepting instructions and

responding appropriately to criticism from supervisors, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others)).) In September 2015 reviewing psychologist Lionel Hudspeth found moderate limitations in maintaining CPP, understanding and remembering detailed instructions, carrying out detailed instructions, and setting realistic goals or make plans independently of others. (Id. (citing id. at 522-38).) Hudspeth limited Keyosha to "simple one/two step repetitive tasks." (Id. at 538.)

The ALJ also cited mental functioning evidence from social worker Joanne Kinzler, who began treating Keyosha in March 2014 and submitted two medical source statements. (Id. at 34 (citing id. at 540-41, 649-51).) In her September 2015 statement, Kinzler indicated that Keyosha had "poor concentration" and "difficulty remembering" what they discussed from one week to the next. (Id. at 540.) Then, in her May 2017 statement, Kinzler noted that while Keyosha "expresses an interest in taking classes in hair and make-up . . . she does not present as having the skills to look up potential schools online to call to inquire about the classes." (Id. at 650.)

Furthermore, in his step-three determination and in his RFC assessment, the ALJ cited evaluations by psychological consultants Drs. Stone and Prescott. (Id. at 28-31, 34-35.) In his April 2015 evaluation, Dr. Stone found that Keyosha "exhibited a mild degree of difficulty maintaining an adequate level of attention and concentration." (Id. at 30, 34-35 (citing id. at 499); see also id. at 498, 500 (noting that Keyosha "requires assistance with practical daily matters including filling out forms and money management" and is "unable to manage benefits" because of

7

"emotional adjustment and cognitive difficulties), 656 (August 2017 examination noting that "[g]iven Keyosha's emotional adjustment and cognitive difficulties, she would be unable to manage [disability] benefits").) Dr. Stone observed Keyosha behaving in a child-like manner, as the ALJ also observed during the administrative hearing. (Id. at 29.) Dr. Prescott found in his April 2017 evaluation that Keyosha's speech was "understandable 70 to 80 percent of the time" and that she "had difficulty with her fund of general information, and in completing simple arithmetic." (Id. at 616, 619.) Dr. Prescott noted that if awarded benefits Keyosha would not be "an adequate manager" of funds. (Id. at 620.)

Keyosha argues that despite having recognized her mental deficits, the ALJ failed to account for them in his hypothetical to the VE and in the RFC, which limited her to carrying out "simple, routine and repetitive tasks," performing no production-rate work, and having only occasional interaction with coworkers and the public. (Id. at 32.) Citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), and related cases, Keyosha asserts that while an ALJ need not use "magic words" to accommodate mental deficits or CPP limitations in a hypothetical question or RFC, limiting a claimant to "simple, routine tasks" generally is insufficient, *see Crump*, 932 F.3d at 570. (R. 14, Pl.'s Br. at 13; R. 25, Pl.'s Reply at 3.) She further contends that eliminating jobs with production quotas or fast-paced work also does not adequately capture CPP limitations. (R. 14, Pl.'s Br. at 13.)

The government responds by pointing out that Keyosha does not challenge the ALJ's symptom assessment and noting alleged inconsistencies between self-reports

8

and the objective evidence. (R. 24, Govt.'s Resp. at 4-10.) The government further argues that a "fact-specific inquiry," rather than a categorical rule, must be applied here. (Id. at 11.) Based on the record presented, the government contends that the ALJ properly accounted for all mental limitations. (Id. at 11-14.) For support the government relies on *Jozefyk*, 923 F.3d at 497-98, in which the Seventh Circuit affirmed an ALJ's translation of a moderate CPP limitation into restrictions to simple, repetitive tasks and limited interactions with others. (R. 24, Govt.'s Resp. at 11-12.)

The court finds that, even excluding Keyosha's symptom allegations, the evidence recognized by the ALJ reveals that the hypothetical posed to the VE and the RFC assessment do not sufficiently account for Keyosha's mental limitations. To be sure, the evidence discussed by the ALJ reflects cognitive and academic difficulties and moderate deficits in understanding, remembering, or applying information, interacting with others, and CPP. (A.R. 28-30.) The ALJ's non-exertional limitations do not adequately account for these difficulties, especially with respect to persistence. The ALJ's conditions say nothing, for example, about her ability to sustain a given task for the course of a standard eight-hour workday. *See Martin*, 950 F.3d at 374. Her ability to remain on task is important given the VE's testimony that a claimant with her RFC could not be off task more than 15% of the time, or 72 minutes in an 8-hour workday, and that the off-task time would include two "customary breaks" totaling 20 to 30 minutes. (A.R. 109.)

9

The Seventh Circuit recently explained the disconnect between limiting a claimant to unskilled work and adequately accounting for CPP limitations:

> [T]he relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin*, 950 F.3d at 369. In that case, the court upheld the ALJ's RFC assessment where it included "pace-related limitations" providing the claimant with flexibility and goal-oriented work requirements. *Id.* at 374. By contrast, in another Seventh Circuit case in which the ALJ's RFC limited the claimant to "'simple, routine, repetitive tasks' with few workplace changes," the court found such language insufficient to account for the likelihood that the claimant would be off task up to 20 percent of the time. *Crump*, 932 F.3d at 569-70. Here the court does not adopt a categorical rule as to which words are sufficient to account for limitations such as those that Keyosha experiences. Rather, based on the specific facts presented, the court concludes that the ALJ did not go far enough to address the moderate limitations in the mental functioning areas Keyosha suffers. Accordingly, without more, the hypothetical posed to the VE and the RFC crafted by the ALJ are deficient.

The government argues that the Seventh Circuit's decision in *Jozefyk*, 923 F.3d 492, supports an affirmance of the ALJ's decision. (R. 24, Govt.'s Mem. at 21-13.) In that case, the court upheld an ALJ's hypothetical question and RFC assessment restricting the claimant to simple, repetitive tasks with limited interaction with others, finding such language sufficient where medical evidence showed impairments

10

present only when the claimant was with other people or in a crowd. *Jozefyk*, 923 F.3d at 498. The government argues that here the ALJ relied on available record evidence, including the opinions of the state agency reviewing physicians. (R. 24, Govt.'s Mem. at 12.) According to the government, had Keyosha wanted to rebut those opinions, she should have secured an opinion suggesting greater restrictions. (Id.) The Seventh Circuit recently explained, however, that the *Jozefyk* decision was based on a lack of testimony and medical evidence supporting CPP limitations. *See Crump*, 932 F.3d at 571. Here, by contrast, the evidence recognized by the ALJ shows that Keyosha suffers from moderate CPP and other limitations. Moreover, the ALJ asked the VE "[h]ow much time a person could be off task before it becomes work-preclusive," (A.R. 109), signaling his understanding that Keyosha's CPP challenges are associated with such deficits, *see Crump*, 932 F.3d at 570-71. But the ALJ failed to incorporate the VE's response in the RFC, "leaving the RFC altogether uninformed by considerations" relating to Keyosha's inability to remain on task. *Id.*

The government next contends that the paragraph B criteria have been revised to define a "moderate" rating, and that the new definition supports affirming the ALJ's decision. (R. 24, Govt.'s Mem. at 13-14.) The term "moderate" now means that a claimant can fairly function independently, appropriately, effectively, and on a sustained basis in the pertinent mental functioning area. (Id. (citing 20 C.F.R. Pt. 404, Subpt. B, App. 1, § 12.00(F)).) In so arguing, the government appears to equate a moderate limitation with "no" limitation. *See Michael S.L. v. Comm'r of Soc. Sec.*, No. 19 CV 1083, 2020 WL 1955253, at *6 (S.D. Ill. April 23, 2020). Yet even under

11

the new definition, "a moderate limitation is more than a slight limitation." *Id.* Accordingly, the government's argument is unavailing. Because the ALJ did not sufficiently account for Keyosha's mental limitations, remand is required.

**B.  Step-Five Determination**

Given the deficiencies in the hypothetical posed to the VE and the ALJ's RFC assessment, the step-five determination is "call[ed] into doubt" and must be reassessed on remand. *See Crump*, 932 F.3d at 570. The court nonetheless addresses Keyosha's argument to avoid step-five disputes on remand. Keyosha contends that the ALJ erred by relying on VE testimony that sufficient work would be available to a hypothetical person with the RFC the ALJ assigned to her. (R. 14, Pl.'s Mem. at 14-15.) At step five an ALJ must ensure that substantial evidence supports the VE's testimony that "suitable jobs exist in significant numbers." *Chavez v. Berryhill*, 895 F.3d 962, 963 (7th Cir. 2018).

During the administrative hearing, the VE testified that, based on a hypothetical restricting a person with Keyosha's RFC to carrying out simple, routine tasks and no production-rate work, 146,000 jobs existed in the national economy. (A.R. 104-05.) When adding restrictions for repetitive tasks and only occasional interactions with coworkers and the public, the VE said that the identified jobs would not be affected. (Id. at 107-08.) The ALJ relied on the VE's testimony in finding Keyosha not disabled. (Id. at 39-40.) Keyosha now argues that a separate database— SkillTran Job Browser Pro—shows that only about 24,000 jobs would be available to a person with her RFC. (R. 14, Pl.'s Br. at 14-15.) She claims that this new evidence

12

renders the VE's analysis—and the ALJ's reliance on that testimony—erroneous. (Id.)

The Seventh Circuit recently considered a step-five challenge based on the reliability of job-number estimates. *Chavez*, 895 F.3d at 963. The court in *Chavez* vacated an ALJ's decision because the ALJ did not ensure the reliability of the VE's job estimates. *Id.* During the hearing in that case the claimant objected to job estimates based on the VE's application of the equal distribution method. *Id.* at 966. Using the occupational density method, coupled with SkillTran's Job Browser Pro software, yielded far lower job estimates, according to the VE. *Id.* But the VE rejected that method in favor of the one providing higher job estimates. *Id.* In doing so, the court found that the VE did not provide a rational basis with "probative force" for relying on the equal distribution method. *Id.* at 967. While "[e]stablishing the reliability of a job-number estimate does not require meeting an overly exacting standard," *id.* at 968, any method used to calculate job numbers "must be supported with evidence sufficient to provide some modicum of confidence in its reliability," *id.* at 969. Accordingly, before an ALJ may rely on a job estimate, "when confronted by a claimant's challenge, [the ALJ] must require the VE to offer a reasoned and principled explanation." *Id.* at 970.

Here Keyosha did not contest the VE's job-number estimates during the hearing. Nor did she cross-examine the VE to determine how a different methodology or data from SkillTran's JobBrowser Pro database might affect his analysis. As a result, the ALJ had no reason to examine the VE about different methodologies or to

13

seek a more detailed explanation. This court's task on review is not to examine new evidence but instead to consider whether substantial evidence supports the VE's testimony that suitable jobs exist in significant numbers. *See Chavez*, 895 F.3d at 963. Here the court finds that it does. To be sure, the VE based his testimony on his own experience, the Dictionary of Occupational Titles and companion periodicals, and agency guidelines. (Id. at 104, 107-08, 110.) The VE's testimony was both "cogent and thorough," *Biestek*, 139 S. Ct. at 1155, particularly in response to clarifying questions by the ALJ ensuring that the identified jobs required repetitive tasks, rather than simply unskilled work, and did not require more than a fourth-grade level of math. (Id. at 106-07.) *Cf. Brace v. Saul*, ___ Fed. Appx. ___ (7th Cir. Aug. 14, 2020) (remanding step-five determination where VE provided "entirely unilluminating" and "unintelligible" testimony using a methodology that was undefined).

Despite finding no error in the VE's analysis, or in the ALJ's reliance on such testimony, the ALJ must reassess the step-five determination on remand in light of the deficiencies in the RFC assessment. *See Crump*, 932 F.3d at 570. Should Keyosha challenge the VE's job estimates at that time, the ALJ should require the VE to provide "a reasoned and principled explanation" supporting his methodology, in accordance with *Chavez*.

## Conclusion

For the foregoing reasons, Keyosha's motion for summary judgment is granted and the government's is denied.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**

15